UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PROGRESSIVE MOUNTAIN INSURANCE COMPANY,<br><br>　　Petitioner,<br><br>v.<br><br>YAOBIN CHEN, et al.,<br><br>　　Respondents. | CIVIL ACTION NO.<br>1:22-CV-1913-JPB |

## ORDER

This matter comes before the Court on Progressive Mountain Insurance Company's ("Petitioner") Motion for Summary Judgment [Doc. 61] and Motion for Default Judgment [Doc. 60]. This Court finds as follows:

## PROCEDURAL HISTORY

Petitioner filed this declaratory judgment action against Yaobin Chen ("Yaobin"), Season Seafood Trading, Inc., Sauting Chen, Ling Liu, Jing Liu and Jiankang Shi on May 13, 2022. [Doc. 1]. Petitioner subsequently filed a Second Amended Petition for Declaratory Judgment on November 2, 2022. [Doc. 51]. Yaobin appeared in this matter on June 15, 2022. [Doc. 5]. The remaining respondents, which shall hereinafter be called "the Season Seafood Respondents," are in default.

On March 16, 2023, after the discovery period closed, Petitioner filed a Motion for Summary Judgment. [Doc. 61]. Petitioner also filed a Motion for Default Judgment. [Doc. 60]. The motions are now ripe for review.

## FACTUAL HISTORY

The Court derives the facts of this case from Petitioner's Statement of Material Facts [Doc. 61-2], Yaobin's Statement of Material Facts [Doc. 68] and Petitioner's Response to the Facts Contained in Yaobin's Brief and Statement of Material Facts [Doc. 71]. The Court also conducted its own review of the record.

As an initial matter, the Court notes that Yaobin failed to comply with the Local Rules in several respects. For example, the Local Rules of this Court require a respondent to a summary judgment motion to include with his responsive brief "a response to the movant's statement of undisputed facts." LR 56.1(B)(2)(a), NDGa. The Local Rules state that the Court

> will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

LR 56.1(B)(2)(a)(2), NDGa. Here, Yaobin failed to file a response to Petitioner's statement of facts. Consequently, those facts are deemed admitted.

2

Yaobin did include his own Statement of Material Facts in his response brief. However, some of the facts are not properly supported by the citation provided, and other facts do not include a citation. In accordance with the Local Rules, this Court will not consider unsupported facts or facts that Yaobin raises solely in his brief. The Court will, however, use its discretion to consider all facts the Court deems material after reviewing the record. The facts of this case, for the purpose of adjudicating the instant motion, are as follows:

In 2019, Yaobin worked as a full-time employee of Season Seafood as a truck driver.[1] [Doc. 61-2, p. 3]. On August 18, 2019, Season Seafood tasked Yaobin with picking up a load of fish from a fish farm in Arkansas. Id. at 2. On his return trip to Atlanta, Yaobin was severely injured in an accident after he lost control of the 2018 Hino he was driving, crossed the median and struck another tractor trailer head on. Id. at 2-3.

The 2018 Hino, which was owned by Season Seafood, was insured by Petitioner pursuant to an automobile insurance policy (the "Policy"). Id. at 5. The Policy contained several exclusions. For instance, the Policy contained an MCS-90 Endorsement. The endorsement had an exclusion which stated that the

---

[1] Season Seafood was subject to the Workers' Compensation Act because it had at least three employees. [Doc. 61-2, p. 4]. It is undisputed that Season Seafood failed to purchase the required workers' compensation insurance. Id.

"insurance . . . does not apply to injury to or death of the insured's employees while engaged in the course of their employment." Id. at 6. The Policy also included an exclusion that expressly denied coverage for bodily injury to the insured's employees and for injuries that would be covered by workers' compensation. Id. at 7. More particularly, the Workers' Compensation Exclusion stated that the Policy does not provide coverage for "[a]ny obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law." Id.

In addition to the two exclusions identified above, the Policy also contained an Uninsured Motorist Coverage Endorsement. [Doc. 1-1, p. 43]. Under this endorsement, Petitioner agreed to "pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury or property damage." Id. This endorsement applied when: (1) an injury was sustained by an insured; (2) the injury was caused by an accident; and (3) the events leading to the injury arose "out of the ownership, maintenance, or use of an uninsured auto." Id. Significantly, the endorsement specifically stated that "an 'uninsured auto' does not include any vehicle or equipment . . . shown on the declarations page of this

4

policy."  Id. at 45.  Particularly relevant here, the vehicle that Yaobin was driving was listed on the declarations page.

On July 12, 2021, Yaobin filed a lawsuit against the Season Seafood Respondents in the State Court of Gwinnett County.  [Doc. 61-2, p. 4].  Thereafter, Petitioner filed the present action for declaratory judgment to determine its rights and obligations under the Policy.

## ANALYSIS

As already stated above, Petitioner filed a Motion for Summary Judgment and a Motion for Default Judgment.  The Court will address the Motion for Summary Judgment first.

## MOTION FOR SUMMARY JUDGMENT

**A.    Legal Standard**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id. After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating that summary judgment is improper because a material issue of fact does exist. Id. However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251). If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

B.     **Claim for Declaratory Relief**

Petitioner argues that it is entitled to summary judgment because Yaobin's claims for coverage are barred by, among other things, the exclusion contained in the MCS-90 Endorsement and the Workers' Compensation Exclusion. Petitioner also asserts that Yaobin is not entitled to uninsured motorist coverage because the 2018 Hino does not meet the definition of an uninsured automobile. Yaobin, on the other hand, contends that the enforcement of the applicable exclusions would violate public policy. Below, the Court considers the Policy's terms as applied to this case before turning to whether any of the exclusions are unenforceable as violative of public policy.

Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983). Therefore, "as with any contract," the Court begins "with the text of the contract itself." Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008). If the contract is unambiguous, the Court's role "is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Id. Courts have "no legal authority to disregard" policy language that is unambiguous. Cotton States Mut. Ins. Co. v. Hipps, 481 S.E.2d 876, 878 (Ga. Ct. App. 1997). Finally, "contract

disputes are well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003).

In this case, neither party claims that the Policy is ambiguous nor disputes that the plain language of the exclusion contained in the MCS-90 Endorsement or the Workers' Compensation Exclusion operates to bar Yaobin's claims. The Court will nevertheless discuss the applicability of each provision in an abundance of caution. The exclusion contained within the MCS-90 Endorsement provides, in part, that the "insurance . . . does not apply to injury to or death of the insured's employees while engaged in the course of their employment." [Doc. 61-2, p. 6]. Here, the uncontroverted evidence shows that Yaobin was an employee of Season Seafood—the insured—and acting in the course and scope of his employment at the time he was injured. Consequently, in light of the plain language of the applicable exclusion, Petitioner has no obligation under the Policy to Yaobin.

The Workers' Compensation Exclusion excludes from coverage "[a]ny obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law." Id. at 7. In Georgia, for an injury to be compensable in the workers' compensation context, "an injury must

8

both occur 'in the course of employment' and 'arise out of employment.'" SGI Liquidating Corp. v. Hartford Ins. Co., 526 S.E.2d 555, 557 (Ga. 2000).  In this case, it is undisputed that on the day in question, Season Seafood tasked Yaobin with picking up a load of fish from a fish farm in Arkansas.  On his return trip, Yaobin was involved in a car accident.  This Court thus easily concludes that Yaobin's injury arose out of his employment (he was employed as a truck driver) and occurred in the course of his employment (he was instructed by his employer to pick up fish on the day in question), and therefore the Workers' Compensation Exclusion operates to exclude coverage for Yaobin's claims under the Policy.

The Uninsured Motorist Coverage Endorsement is also at issue here.  That endorsement provides coverage where an insured sustained an injury that was caused by an accident and arose "out of the ownership, maintenance, or use of an uninsured auto." [Doc. 1-1, p. 43].  While this Court concludes that an insured was injured in an accident, the plain and unambiguous terms of the endorsement state that an uninsured auto does not include any vehicle or equipment shown on the declarations page of the Policy.  Here, it is uncontroverted that the Hino was listed on the declarations page of the Policy.  As such, the Court finds that Yaobin is not entitled to coverage under the Uninsured Motorist Coverage Endorsement.

In sum, the Court has reviewed the exclusion contained in the MCS-90 Endorsement, the Workers' Compensation Exclusion and the Uninsured Motorist Coverage Endorsement.  The plain terms of the Policy—by which this Court is bound—precludes Yaobin from recovering any benefits.  Again, Yaobin has not argued, and the Court does not perceive, that any ambiguity exists in the language at issue.  See Ace Am. Ins. Co. v. Wattles Co., 930 F.3d 1240, 1252 (11th Cir. 2019) ("If the policy language is clear and unambiguous, the contract must be enforced according to its plain terms."); see also Hipps, 481 S.E.2d at 878 ("It is well settled that where no ambiguity in a policy of insurance exists, the courts must adhere to the contract made by the parties even if it is beneficial to the insurer and detrimental to the insured . . . .").  The Policy's language clearly and unambiguously dictates that Yaobin is ineligible for coverage.  Because Petitioner has shown that no genuine issue of fact exists as to the terms of the Policy, the burden shifts to Yaobin to establish that a dispute of fact precludes summary judgment.

Yaobin argues that the exclusion contained in the MCS-90 Endorsement and the Workers' Compensation Exclusion are unenforceable because they violate public policy.  As a general rule, exclusions from coverage are not "per se" prohibited and must be individually evaluated to determine whether they are

against public policy.  Saxon v. Starr Indemn. & Liab. Co., 793 S.E.2d 659, 662 (Ga. Ct. App 2016).  In determining whether an exclusion violates public policy, courts should consider whether the exclusion "either unfairly penalizes innocent victims or unfairly exposes the insured to liability."  Id.  "This results in a basic rule that if either of the interests dealt with is left unprotected, the exclusionary clause in the insurance contract offends public policy.  This rule, of course, does not apply when neither the injured party not the unsuspecting insured is left unprotected."  Id.

As stated above, Yaobin argues that the exclusion in the MSC-90 Endorsement and the Workers' Compensation exclusion violates public policy.  Specifically, Yaobin contends that these exclusions violate public policy because Season Seafood did not purchase workers' compensation insurance.  Without workers' compensation insurance, Yaobin contends that he is left without a remedy for his injuries.

The Court recognizes that Season Seafood failed to obtain the required workers' compensation insurance.  That does not mean, however, that Yaobin is left without a remedy.  Indeed,

> [t]he [Workers' Compensation Act] requires that employers insure the payment of workers' compensation benefits to injured workers, either by procuring insurance or by qualifying as a self-insurer.  If no insurance is obtained, the employer remains liable

> for payment of benefits. If the employer becomes insolvent, then the agent of the employer responsible for procuring workers' compensation benefits may be held personally liable for payment of such benefits [awarded by the State Board of Workers' Compensation].

Id. at 661. This means that even if Season Seafood did not have the required insurance, it remains liable for the payment of benefits under the Workers' Compensation Act. As a result, the Court finds that Yaobin has not been left unprotected. Id. at 662 (determining that public policy was not violated because the plaintiff had the remedy of the Workers' Compensation Act). Because Yaobin has not been left unprotected, the Court finds that these two exclusions are enforceable and do not violate public policy.

As explained previously, Yaobin was not entitled to uninsured motorist benefits because the accident did not arise out of the "ownership, maintenance, or use of an uninsured auto." [Doc. 1-1, p. 43]. Yaobin does not challenge the definition of uninsured auto or argue that this portion of the Policy is enforceable in any way. Instead, Yaobin argues that a separate exclusion—an exclusion that did not operate to bar Yaobin's claims—is unenforceable as violative of public policy. Specifically, the exclusion states that "[c]overage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws: a. workers' compensation law; or b. disability

12

benefits laws." Id. at 45.  Yaobin contends that the exclusion "renders the [uninsured motorist] coverage useless" because "there is seemingly no scenario under the [Uninsured Motorist Coverage Endorsement] where uninsured motorist coverage would ever be applicable." [Doc. 69, p. 11].  Because this exclusion was not used to bar coverage in this case, the Court need not decide whether it violates public policy.[2]

As the foregoing analysis shows, the plain language of the Policy demonstrates that the exclusion contained in the MCS-Endorsement and the Workers' Compensation Exclusion operate to preclude Yaobin's claims.  Moreover, it is clear that the Uninsured Motorist Coverage Endorsement does not apply here.  Importantly, Yaobin has not shown that any of the exclusions are void as violative of public policy.  Accordingly, Petitioner has shown that it is entitled to summary judgment, and therefore its motion is **GRANTED**.[3]

---

[2] The Court notes that it is not persuaded that the Uninsured Motorist Coverage Endorsement operates in such a way where it would never apply.

[3] In his response, Yaobin argues that summary judgment is inappropriate because discovery is still needed.  Because the parties had ample time to complete discovery, Yaobin's request for additional discovery is **DENIED**.

**MOTION FOR DEFAULT JUDGMENT**

Petitioner also moved for a default judgment as to the Season Seafood Respondents. Petitioner asks the Court to enter a declaration that it is not required to provide coverage, indemnification or a defense to the Season Seafood Respondents in the underlying lawsuit.[4]

**A. Legal Standard**

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default. Fed. R. Civ. P. 55(b)(2–). Default judgments are typically disfavored. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244-45 (11th Cir. 2015). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Id. at 1245 (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). In other words, "[t]he court may grant default judgment [only] on those claims brought by [the] [p]laintiff that are legally sufficient and supported by well-pleaded allegations." Earthlink, Inc. v. Log on Am., Inc., No. 1:02-CV-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); see also Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988) ("In considering a motion for entry of

---

[4] Yaobin filed the underlying lawsuit against the Season Seafood Respondents on July 12, 2021, in the State Court of Gwinnett County. In the lawsuit, Yaobin seeks damages for the injuries he sustained in the accident.

default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint."); Functional Prods. Trading, S.A. v. JITC, LLC, No. 1:12-CV-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim," and the Court must determine "whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Surtain, 789 F.3d at 1245 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Importantly, "[d]efault judgments are appropriate in declaratory judgment actions relating to insurance coverage." U.S. Auto. Ass'n v. Dimery, No. 1:09-CV-0015, 2009 WL 10672385, at *1 (N.D. Ga. Apr. 3, 2009).

**B.     Motion for Default Judgment**

As explained above, summary judgment is appropriate in this case as to Yaobin.  Because the Court adjudicated the case on the merits with respect to Yaobin, default judgment is likewise appropriate against the Season Seafood Respondents on the same grounds.  See Branch Banking & Tr. Co. v. Poplar Dev. Co., No. 5:12-CV-457, 2013 WL 2367963, at *1 (M.D. Ga. May 29, 2013) ("[I]f a plaintiff prevails against the non-defaulting defendants, it is then entitled to

judgment against the defaulting . . . defendant as well."). Ultimately, because the well-pleaded allegations in the Second Amended Petition for Declaratory Judgment state a claim and because summary judgment is appropriate as to one of the respondents, the Motion for Default Judgment is **GRANTED**.

## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [Doc. 61] and the Motion for Default Judgment [Doc. 60] are **GRANTED**. The Court hereby **DECLARES** that Petitioner has no obligation to Yaobin. The Court also **DECLARES** that Petitioner has no obligation to provide coverage, indemnification or a defense to the Season Seafood Respondents in the underlying lawsuit. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 7th day of February, 2024.

J. P. BOULEE
United States District Judge